UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KWESI MUHAMMAD,

         Plaintiff,

    v.

CHRISTINE BARBER,

         Defendant.

No. 2:19-cv-2592-TLN-EFB P

FINDINGS AND RECOMMENDATIONS

Plaintiff, a state prisoner, originally filed this action in the Superior Court of California in and for the County of San Joaquin.  ECF No. 1.  Defendant removed it to this court on December 23, 2019.  *Id.*  After removal, plaintiff's complaint was twice dismissed on screening for failure to state a cognizable claim.  *See* ECF Nos. 11 & 16.  Plaintiff was given leave to amend after both dismissals and he has now submitted his second amended complaint (ECF No. 17) which, again, the court must screen.  As discussed below that complaint, too, fails to state a claim.

<u>Screening</u>

I.    <u>Legal Standards</u>

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which

1

1    relief may be granted," or "seeks monetary relief from a defendant who is immune from such

2    relief."  *Id.* § 1915A(b).

3          A pro se plaintiff, like other litigants, must satisfy the pleading requirements of Rule 8(a)

4    of the Federal Rules of Civil Procedure.  Rule 8(a)(2) "requires a complaint to include a short and

5    plain statement of the claim showing that the pleader is entitled to relief, in order to give the

6    defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v.*

7    *Twombly*, 550 U.S. 544, 554, 562-563 (2007) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)).

8    While the complaint must comply with the "short and plaint statement" requirements of Rule 8,

9    its allegations must also include the specificity required by *Twombly* and *Ashcroft v. Iqbal*, 556

10   U.S. 662, 679 (2009).

11         To avoid dismissal for failure to state a claim a complaint must contain more than "naked

12   assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of

13   action." *Twombly*, 550 U.S. at 555-557.  In other words, "[t]hreadbare recitals of the elements of

14   a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at

15   678.

16         Furthermore, a claim upon which the court can grant relief must have facial plausibility.

17   *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual

18   content that allows the court to draw the reasonable inference that the defendant is liable for the

19   misconduct alleged." *Iqbal*, 556 U.S. at 678.  When considering whether a complaint states a

20   claim upon which relief can be granted, the court must accept the allegations as true, *Erickson v.*

21   *Pardus*, 551 U.S. 89 (2007), and construe the complaint in the light most favorable to the

22   plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

23         II.    Analysis

24         The facts of the case are the same as the previous two complaints.  To reiterate, on

25   September 15, 2017, plaintiff's primary care provider – Dr. Win – examined a persistent callus on

26   his left foot that was causing him chronic pain.  ECF No. 17 at 3.  Based thereon, plaintiff was

27   approved for an outpatient consult at San Joaquin General Hospital on October 17, 2017.  *Id.*

28   There, a specialist recommended that plaintiff undergo a "hammertoe correction" procedure.  *Id.*

1    On November 1, 2017, Dr. Win submitted a physician's request for services ("RFS") through

2    InterQual, a program used by the California Department of Corrections and Rehabilitation to

3    review RFS's and determine whether they meet criteria for approval. *Id.* The defendant allegedly

4    denied the procedure request on the grounds that it did not "meet IQC." *Id.* Regardless, plaintiff

5    filed a health grievance concerning the denial and, on December 18, 2017, the defendant's

6    decision was overturned. *Id.* at 4. On January 16, 2018, plaintiff underwent the procedure. *Id.*

7           He now alleges that defendant's denial of Dr. Win's RFS amounted to deliberate

8    indifference and intentional infliction of emotional distress.

9                    A.  Deliberate Indifference

10          To succeed on an Eighth Amendment claim predicated on the denial of medical care, a

11   plaintiff must establish that he had a serious medical need and that the defendant's response to

12   that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see*

13   *also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to

14   treat the condition could result in further significant injury or the unnecessary and wanton

15   infliction of pain. *Jett*, 439 F.3d at 1096. Deliberate indifference may be shown by the denial,

16   delay or intentional interference with medical treatment or by the way in which medical care is

17   provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). To act with deliberate

18   indifference, a prison official must both be aware of facts from which the inference could be

19   drawn that a substantial risk of serious harm exists, and she must also draw the inference. *Farmer*

20   *v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if she knows that plaintiff faces

21   "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures

22   to abate it." *Id.* at 847.

23          Plaintiff alleges that defendant's denial of his provider's RFC was deliberately indifferent

24   insofar as she "refused to authorize [his surgery] for non-medical reasons." *Id.* at 5. He claims

25   that his procedure, by being assigned a tracking number via InterQual, automatically met that

26   system's criteria and, thus, the basis for defendant's denial was erroneous, non-medical, and

27   cannot be construed "simply as a difference of medical opinion." *Id.* at 4. These assertions, as

28   before, fall short of deliberate indifference.

                                            3

1    First, even if plaintiff is correct in his allegation that assignment of a tracking number was

2    an automatic indication that InterQual's criteria had been satisfied, he has not alleged facts which

3    demonstrate that defendant's denial based on failure to meet "IQC"[1] was deliberately indifferent.

4    Nothing in the complaint indicates that defendant *understood* that her decision to deny the

5    procedure was wrong or medically unacceptable.  In other words, no facts alleged in the

6    complaint, taken as true, satisfy the subjective element of deliberate indifference.  To be sure,

7    plaintiff repeatedly alleges that the defendant acted with deliberate indifference.  *See* ECF No. 17

8    at 5.  He goes so far as to allege, albeit vaguely, that defendant acted "intentionally," "cruel[ly]

9    and deliberate[ly]," and "fraudulently."  *Id.*  But these are mere labels and, unsupported by factual

10   allegations of substance, do not meet the required pleading standard.  *See Twombly*, 550 U.S. at

11   555 ("A pleading that offers mere 'labels and conclusions' or 'a formulaic recitation of a cause of

12   action's elements will not do.'").  He never alleges how he came to know the mindset with which

13   defendant acted.  Nor does he allege how he (or the reader) can confidently rule out the

14   possibility of an obvious, but still good-faith mistake on the part of the defendant.  *See Whitley v.*

15   *Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in

16   good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments

17   Clause, whether that conduct occurs in connection with establishing conditions of confinement,

18   supplying medical needs, or restoring official control over a tumultuous cellblock.").  As the court

19   explained in its last screening order:

20       Alleging that the RFS met InterQual's criteria for approval despite
         defendant's notation otherwise is not the same as showing that
21       defendant was aware that plaintiff faced a substantial risk of serious
         harm if the RFS was denied but denied it nonetheless. Defendant may
22       simply have disagreed with the program's conclusion. A
         disagreement between medical providers as to the proper course of
23       treatment does not make out an Eighth Amendment violation unless
         it results in care that is "medically unacceptable under the
24       circumstances and was chosen in conscious disregard of an excessive
         risk to the prisoner's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058
25       (9th Cir. 2004). Plaintiff has not alleged facts that, if true, would
         show that defendant's denial of the RFS for surgery was medically
26

27       [1] Plaintiff alleges that the acronym "IQC" simply stands for InterQual.  *See* ECF No. 17 at
         3.  It is unclear, then, what purpose the "C" serves.  Regardless, the court will take his allegation
28       as true at this stage.

1                unacceptable and chosen in conscious disregard of an excessive risk
to his health.

2

3  ECF No. 16 at 4.  Plaintiff has attempted to circumvent this deficiency in his complaint merely

4  by alleging that "[d]efendant's refusal to approve his surgery cannot be construed as simply a

5  difference of medical opinion when her only reason for denying Dr. Win's RFS was because the

6  requested procedure did not meet InterQual's criteria, when in fact, it did."  ECF No. 17 at 4.  But

7  this is merely a reiteration of his contention that defendant was wrong to deny the RFS; it is not a

8  substantive allegation which, if true, would establish that defendant knew that her actions would

9  expose plaintiff to a substantial risk of serious harm.[2]

10                B.  <u>Intentional Infliction of Emotional Distress</u>

11       Plaintiff's allegation that defendant's denial of his procedure amounted to intentional

12  infliction of emotional distress also fails.  "In order to establish a claim for intentional infliction

13  of emotional distress under California law, [plaintiff is] required to show (1) that the defendant's

14  conduct was outrageous, (2) that the defendant intended to cause or recklessly disregarded the

15  probability of causing emotional distress, and (3) that the plaintiff's severe emotional suffering

16  was (4) actually and proximately caused by defendant's conduct."  *Austin v. Terhune*, 367 F.3d

17  1167, 1172 (9th Cir. 2004).  "Only conduct 'exceeding all bounds usually tolerated by a decent

18  society, of a nature which is especially calculated to cause, and does cause, mental distress' is

19  actionable."  *Brooks v. United States*, 29 F. Supp. 2d 613, 617-18 (N.D. Cal. 1998).  As before,

20  plaintiff alleges only that defendant denied his primary care provider's RFS.  Specific to his

21  emotional distress claim, he alleges that "defendant did not exercise reasonable medical

22  judgment" and her conduct "was made with reckless disregard of the probability that plaintiff

23  would suffer emotional distress as a result."  ECF No. 17 at 6.  These allegations are, like the ones

24  purporting to support his deliberate indifference claim, little more than labels and legal

25

26        [2] Indeed, the RFS that defendant denied had three separate "check boxes" which could be
used to designate the requested treatment as "emergent," "urgent," or "routine."  ECF No. 17 at

27  14.  The relevant RFS in this case was marked "routine" (*id.* at 14) and, thus, it is difficult to see
how defendant knew or should have known that her denial would expose plaintiff to substantial

28  harm.

1    conclusions.  They do not establish that defendant's conduct in denying the RFS was outrageous

2    or that she recklessly disregarded the probability that plaintiff would suffer emotional distress.

3           III.    Leave to Amend

4           In its previous screening order, the court warned plaintiff that, after submission of the

5    current complaint, it would not be inclined to grant further leave to amend.  This is now the third

6    screening order and, each time, the court has found the same deficiencies in plaintiff's

7    complaints.  Thus, it concludes that any further attempts to amend would be futile and

8    recommends that this action be dismissed.  *See McGlinchy v. Shell Chemical Co.*, 845 F.2d 802,

9    809-810 (9th Cir. 1988) ("Repeated failure to cure deficiencies by amendments previously

10   allowed is another valid reason for a district court to deny a party leave to amend.").

                                    Conclusion

12          Accordingly, it is it is RECOMMENDED that plaintiff's second amended complaint be

13   DISMISSED for failure to state a cognizable claim and the Clerk be directed to close the case.

14          These findings and recommendations are submitted to the United States District Judge

15   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

16   after being served with these findings and recommendations, any party may file written

17   objections with the court and serve a copy on all parties.  Such a document should be captioned

18   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

19   within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

20   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

21   DATED:  September 22, 2020.

23                           EDMUND F. BRENNAN
                             UNITED STATES MAGISTRATE JUDGE